# STEELMAN v. OREGON DAIRYMEN'S LEAGUE.

(192 Pac. 790.)

**Agriculture—Dairy Corporation Held not Entitled to Apportion Losses as Against Contract Allowing it to Charge Commissions for Collections.**

1. Where a dairyman has contracted with a dairymen's league, of which he was a stockholder, to ship milk to certain consignees and to allow the league to collect the proceeds for a certain commission, and the articles of incorporation and by-laws of the league do not give the authority to apportion gains and losses among the several stockholders because of the refusal of a large consumer to accept shipments, action will lie by the stockholder to recover amounts collected by the league on his shipments less commissions, notwithstanding a purported agreement among stockholders generally to apportion losses.

**Setoff and Counterclaim—Cause of Action not Existing at Commencement of Suit not Subject of Counterclaim.**

2. In a dairyman's action against a dairymen's league, in which he was a stockholder, to recover money collected by it under an agreement, the corporation could not counterclaim on the ground that the stockholders had agreed to apportion losses because of refusal of a large consumer to accept shipments, under Section 74, L. O. L, as amended by Laws of 1915, page 24; the cause of action set up under the counterclaim not existing at the time suit was commenced.

**Agriculture—Evidence Insufficient to Sustain Finding That Stockholder of Dairymen's League was Present at Meeting and Voted.**

3. In a dairyman's action against a dairymen's league, of which he was a stockholder, to recover money collected on shipments under contract, evidence *held* not to sustain a defense that plaintiff was present at a stockholders' meeting and voted for apportionment of losses.

**Agriculture—Notice of Stockholders' Meeting of Dairy Corporation Held Insufficient to Charge Stockholder With Actions Taken Therein.**

4. A notice of the stockholders' meeting of dairymen's league *held* not sufficiently definite to charge a stockholder with action taken at such meeting to apportion losses occasioned by the refusal of a large consumer to accept shipments, where he was not present and affirmatively participated therein.

From Multnomah: ROBERT TUCKER, Judge.

Department 1.

The plaintiff is the holder of twenty-four shares of the capital stock of the defendant corporation, for which he paid to the defendant the full par value on his subscription. He is a dairyman, and it is admitted that about October 27, 1917, he contracted with the defendant to consign milk produced by him to parties designated by the defendant from that date to December 31, 1918, and that the defendant agreed to collect all moneys due to plaintiff on such consignments, and pay the same to him, less a commission for its services of five cents per hundredweight of the milk. It is also admitted that the agreement contained this covenant:

"It is mutually covenanted and agreed that, in case either party fails to perform the covenant herein agreed to be performed by such party, the party so failing shall pay to the other the sum of $5 per cow for the number of cows for which said party has taken stock, which sum is hereby fixed and agreed upon as liquidated damages for such failure; that the same shall in no event be considered a penalty."

It is charged by the complaint and admitted by the answer that the plaintiff furnished milk from an average number of twenty-four cows, and that the defendant collected from the Crystal Ice & Storage Company, about July 1, 1918, $169.19 for milk consigned to the latter company about that time. The plaintiff avers, but it is denied that the defendant has failed to account to him for that money. The pleadings agree that the defendant was entitled to deduct from that sum $3.08.

Counting on the alleged failure of the defendant to comply with that part of its agreement requiring

it to pay over to the plaintiff the net amount of collections made to his account, the plaintiff seeks to recover upon the liquidated damages clause of his contract hereinbefore set forth, making a demand for relief of $166.11 as the net proceeds of the sale of his milk, and the further sum of $120 as liquidated damages.

In substance, the affirmative answer of the defendant sets up the history of the plaintiff's subscription for twenty-four shares of its capital stock and the agreement with him described in the complaint, and narrates that, owing to the refusal of a regular purchaser of milk to receive the same any longer, a large excess supply of milk shipped into Portland by stockholders of the defendant was left on hand and had to be disposed of at a loss, or at least for less than the ordinary contract price. The answer goes on further to state that a special meeting of the stockholders of the defendant company was called for June 22, 1918, at which the plaintiff was present, and the refusal of the consignee mentioned to receive further shipments of milk was discussed. As the pleading narrates, thereupon by motion duly seconded and carried by the unanimous vote of the stockholders present, it was resolved:

"That all loss sustained by the defendant through any arbitrary action of the distributors should be borne by all league members shipping their milk into the Portland market."

It is said that afterward, on June 25, 1918, at a meeting of the executive committee of the defendant, "it was resolved that the board take steps to adjust the June, 1918, loss caused by the arbitrary action of the Portland Damascus Milk Company according to the instructions of the stockholders at the general

meeting June 22, 1918," in consequence of which, the answer declares, "the manager of the defendant was instructed to remit to each shipper at the rate of $2.50 per hundredweight for milk and $0.50 per pound for sweet cream, to avoid the holding up of checks until all accounts were cleaned up, the balance to be remitted when all statements were in." The answer further says that, in pursuance of all of the actions of the stockholders and the executive committee, "there was prepared and tendered to the said plaintiff a check in the sum of $104.51, being the balance due on the basis of said adjustment pending the final settlement of all accounts." The fact that the accounts for the June loss have not been received or adjusted, and that as soon as they come in and are settled, the defendant will make a full settlement of the loss, and will remit any balance due to the plaintiff, is set up as ground for refusal of further payment. It is averred in the answer, and denied by the reply, that the plaintiff attended the stockholders' meeting mentioned.

Presenting a second separate defense, the answer repeats the history of the affairs of the defendant, as already stated, and avers in substance that all other stockholders of the defendant have accepted their checks on the basis of the adjustment mentioned, that the defendant relied on the action of the stockholders, that the plaintiff failed to protest, that he acquiesced in that action, that the defendant has paid out a large sum of money on the basis of said adjustment, and that thereby the plaintiff is estopped to claim anything from the defendant.

The trial was begun before a jury, during the progress of which it was stipulated that the issue should be withdrawn from the jury and submitted to

the court for a decision.   Under these circumstances
the court heard the testimony and made findings of
fact and conclusions of law substantially correspond-
ing to the complaint, upon which judgment was ren-
dered in favor of the plaintiff according to his
prayer, and the defendant appeals.      Affirmed.

For appellant there was a brief over the name of
*Messrs. Wilson & Guthrie,* with an oral argument
by *Mr. James G. Wilson.*

For respondent there was a brief and an oral argu-
ment by *Mr. Loyal H. McCarthy.*

BURNETT, J.—It was competent for the plaintiff
as an individual, irrespective of his holding stock in
the defendant corporation, to contract with it as
effectually and to all intents and purposes as if he
had no share of the stock of the defendant.   The
contract itself is the measure of the rights and lia-
bilities existing between the plaintiff and the defend-
ant as contracting parties.   The action of the stock-
holders in meeting could bind nobody but themselves,
for, as said in Section 6691, L. O. L.:

"From the first meeting of the directors, the powers
vested in the corporation are exercised by them, or by
their officers or agents under their direction, except as
otherwise specially provided in this chapter."

1. There is no provision of law in Oregon whereby
the stockholders shall directly exercise any authority
over the corporate concerns.   They elect directors, it
is true; but when these directors are thus chosen
and qualified the powers of the corporation must be
exercised by them.   At the utmost, the resolution of
the stockholders, "that all loss sustained by the de-

fendant through any arbitrary action of the distributors should be borne by all league members shipping their milk into the Portland market," could be only an expression of their opinion concerning the proper policy of the company. The only interest the defendant had in the transaction consisted of the commission it was entitled to charge. The pleadings show that it was merely an agent for the parties with whom it contracted to secure purchasers and collect the proceeds of the sales. It was not within the scope of its contract, or of its articles of incorporation or by-laws, as they appear in evidence, to apportion gains and losses among the several stockholders. It did not contract with them collectively. The agreement upon which the action is based is made by the defendant with the plaintiff alone and singly. No claim of the defendant upon the money coming into its hands is disclosed by the pleadings, except its percentage of five cents per hundredweight of the milk which had been sold. It admits collecting the money from the plaintiff's consignee. Even conceding that the action of the executive committee was legitimate and authorized, the defense amounts to saying that while there may be some amount of money at variance between the plaintiff and the defendant, it is not yet ascertained from which one a balance is due, the plaintiff or the defendant.

2. According to Section 74, L. O. L., as amended by Chapter 8, Laws of 1915:

"The counterclaim * * must be one existing in favor of a defendant, and against a plaintiff, between whom a several judgment might be had in the action, and arising out of one of the following causes of

action: * * in an action arising on contract, any other cause of action arising also on contract, and existing at the commencement of the action.''

If the plaintiff was liable by reason of the action of the stockholders, to anyone, it would be to his fellow stockholders, who had suffered greater loss than he, and not to the defendant, for the latter had no interest in the question of whether the stockholders gained or lost on the sale of their milk. The utmost concern it had, as already pointed out, was its commission, which in this instance has been satisfied. The corporation itself would have no cause of action against the plaintiff for loss accruing to any stockholder by reason of his failing to get a contract price for his milk. Moreover, the pleading does not show that the cause of action, if it was one arising out of the action of the stockholders or of the directors, existed at the commencement of the action. Indeed, the most that can be claimed for the answer is, that the defendant has held up part of the plaintiff's money with the expectation that a cause of action might be framed against him in the future, by an adjustment of the accounts, but that it does not exist at present, much less at the commencement of the action.

3. So far as the result of the case depends upon the plaintiff's presence at and participation in the meeting of the stockholders, the evidence does not sustain the allegations of the answer on that subject. The only witness for the defendant who speaks about that matter declares in substance that on the roll-call of the stockholders at the meeting the plaintiff was noted as present. In answer to this question: ''Do you know whether he was present at the

time?" he answered: "Yes. Well, I am pretty sure he was, because we called the names." When asked if the plaintiff was present when the resolution was voted upon, he said: "I am not sure at the time the vote was taken." In connection with that matter, counsel for the plaintiff announced at the trial as follows:

"If the court please, to save time in this matter, I am willing to admit that the plaintiff attended this meeting, was there a short time, but deny that any discussion on this subject was up while he was there, or that he had an opportunity of voting on it."

4. The notice of the meeting of the stockholders, as appears by the record, is that it was called for June 22, 1918, "for the purpose, first, of considering and voting upon the question of increasing the capital stock of this company, and, second, for the purpose of considering and acting upon measures for the betterment of the milk industry of the members of the league and the milk situation in general, and to adopt measures for the carrying out of any plans that may be adopted by said meeting." A notice so indefinite is not sufficient to charge a stockholder with what may be done at such a meeting, unless at least he is present and affirmatively participates in the action in question.

Aside from the proposition that the testimony on behalf of the defendant fails to prove its allegation as to the part the plaintiff took in the stockholders' meeting, we are concluded by the principle that the findings of the court amount to a verdict, which is final, if there is any competent evidence to support it.

There is evidence sustaining the court's findings, and for these reasons the judgment rendered thereon must be affirmed.                                    AFFIRMED.

McBRIDE, C. J., and BENSON, J., concur.

HARRIS, J., concurs in the result.